United States District Court
District of Massachusetts

```
_____
                               )
Emily M. Murray,               )
                               )
          Plaintiff,           )
                               )
     v.                        )
                               )     Civil Action No.
Uber Technologies, Inc. and    )     20-11250-NMG
Frederick Q. Amfo,             )
                               )
          Defendants.          )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

Plaintiff Emily Murray ("Murray" or "plaintiff") alleges that defendant Frederick Q. Amfo ("Amfo") sexually assaulted her in April, 2018, while driving for Uber Technologies, Inc. ("Uber", collectively with Amfo, "defendants").

Pending before the Court are the motions of plaintiff to remand this case to state court and of defendant to dismiss plaintiff's complaint.

I.    **Background**

      A.   **Parties**

Defendant Uber is a Delaware corporation with its headquarters in San Francisco, California.  It is a transportation network company that uses a mobile software

application ("the Uber app") to match individuals seeking prearranged transportation ("riders") with non-professional drivers seeking customers ("Uber drivers").  The Uber app is free for both riders and drivers to download and install on their smartphones.  The application process for becoming an Uber driver involves an entirely online application requiring a valid driver's license, vehicle registration and proof of insurance.

Defendant Amfo is a resident of Quincy, Massachusetts and, at the time of the alleged events, was an Uber driver.

Plaintiff Murray is resident of Weymouth, Massachusetts.

**B.**  **Factual Background**

Plaintiff alleges that on April 8, 2018, at approximately 1:45 A.M., she requested a ride through the Uber app from Quincy, Massachusetts, to her home in Weymouth, Massachusetts. The Uber app matched plaintiff with Amfo and Amfo picked plaintiff up in Weymouth.  Instead of driving plaintiff to her prearranged destination, Amfo allegedly parked on a poorly lit street and proceeded to rape plaintiff in his vehicle.

Amfo was arrested and charged with one count of rape.  An immigration detainer was also issued because Amfo was unlawfully present in the United States.  After his arraignment, Amfo posted bail and, before surrendering his passport, boarded a

- 2 -

plane and absconded to Ghana.  He has, apparently, not been located.

### C.  **Procedural Background**

Plaintiff filed her complaint in Massachusetts Superior Court for Norfolk County in June, 2020, alleging general negligence against Uber (Count I); negligent hiring, training, retention, supervision and management against Uber (Count II); and assault, battery, false imprisonment and intentional infliction of emotional distress against Uber as a common carrier and on a theory of respondeat superior and against Amfo individually (Counts III, IV, V and VI).

Uber timely removed the case to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).  Uber filed its motion to dismiss in July, 2020, which plaintiff timely opposed.  Plaintiff then filed a motion to remand the case to state court on grounds of improper removal.

## II.  **Motion for Remand**

Plaintiff seeks remand of this case because Uber purportedly removed it without the consent of the co-defendant, Amfo, in violation of 28 U.S.C. § 1446(b)(2).  Uber responds that plaintiff utilized an incorrect method of service of process upon Amfo and, therefore, his consent to removal was not required.

## A. Legal Standard

A defendant is entitled to remove

> [a]ny civil action brought in a State court of which
> the district courts of the United States have original
> jurisdiction . . . to the district court of the United
> States for the district and division embracing the
> place where such action is pending.

28 U.S.C. § 1441(a).  A notice of removal must be filed within

30 days of receipt of the complaint. § 1446(b)(1).  The so-

called "rule of unanimity" provides that only properly joined

and served defendants must consent to removal. § 1446(b)(2)(A);

Sutler v. Redland Ins. Co., No. 12-10656-RWZ, 2012 WL 5240124,

*3 (D. Mass. Oct. 24, 2012) (citing Pullman Co. v. Jenkins, 305

U.S. 534, 540-41 (1939)); see also Acosta Oliveras v. Pittsburgh

Corning Corp., 36 F. Supp. 2d 443, 444 (D.P.R. 1999).

## B. Application

Plaintiff contends that she served Amfo in accordance with

Mass. Gen. L. c. 90, § 3A, which provides

> [t]he acceptance by a person who is a resident of any
> other state or country of the rights and privileges
> conferred by section three,[1] as evidenced by the
> operation, by himself or agent, of a motor vehicle or
> trailer thereunder . . . in this commonwealth
> otherwise than under said section, shall be deemed
> equivalent to an appointment by him of the registrar,
> or his successor in office, to be his true and lawful
> attorney upon whom may be served all lawful processes
> in any action or proceeding against him or his

---

[1] Mass. Gen. L. c. 90, § 3 generally permits the operation of
out-of-state registered vehicles in Massachusetts.

- 4 -

> executor or administrator, **growing out of any accident
> or collision** in which such person or his agent may be
> involved while operating a motor vehicle or trailer on
> such way or in such place, and said acceptance or
> operation shall be a signification of his agreement
> that any such process against him, or his executor or
> administrator, which is so served shall be of the same
> legal force and validity as if served on him
> personally.

If § 3A applies, then service may be effectuated by

> leaving a copy of the process . . . in the hands of
> the registrar, or in his office, and by giving the
> defendant notice . . .

Mass. Gen. c. 90, § 3C.

The bolded language plainly conditions the applicability of § 3A, which permits the method of service outlined in § 3C, upon plaintiff's demonstration that her claim "gr[ew] out of any accident or collision." Id.  Such clear and unambiguous language will be interpreted according to its plain meaning. In re Fin. Oversight & Mgmt. Bd. For Puerto Rico, 919 F.3d 121, 128 (1st Cir. 2019).

Although the alleged criminal misconduct occurred in Amfo's vehicle, it did not grow out of or otherwise involve an "accident or collision."  The authorized procedure for service of process outlined in § 3A is, therefore, unavailable to plaintiff and her attempted service on Amfo is ineffective.

Apparently acknowledging the inapplicability of § 3A, plaintiff argues for the first time in her reply brief that

service was actually effectuated under Mass. Gen. L. c. 90 § 3D rather than § 3A.  That provision provides that

> [a]pplication for registration of a motor vehicle or trailer or for a license to operate motor vehicles shall constitute and irrevocably appoint, in case the certificate of registration or license applied for is issued, the registrar or his successor in office the true and lawful attorney of the applicant, upon whom may be served all lawful processes in any action or proceeding against him, or his executor or administrator, **growing out of any accident or collision** in which he or his agent may be involved while operating a motor vehicle within the commonwealth . . .

Mass. Gen. L. c. 90, § 3D (emphasis supplied).  Arguments raised for the first time in a reply brief are generally deemed waived. See, e.g., Noonan v. Wonderland Greyhound Park Realty, LLC, 723 F. Supp. 2d 298, 349 (D. Mass. 2010).  In any event, as the bolded language demonstrates, plaintiff's contention that service was properly effectuated pursuant to § 3D fails for the same reason that §§ 3A and 3C are inapplicable.

Accordingly, the rule of unanimity does not apply and plaintiff's motion for remand will be denied.

### III. <u>Motion to Dismiss</u>

#### A.  Legal Standard

To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of
a motion to dismiss, the Court may only look to the facts
alleged in the pleadings, documents attached as exhibits or
incorporated by reference and matters of which judicial notice
can be taken. Nollet v. Justices of Trial Court of Mass., 83 F.
Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 228 F.3d 1127 (1st
Cir. 2000).

Furthermore, the Court must accept all factual allegations
in the claim as true and draw all reasonable inferences in the
claimant's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68,
69 (1st Cir. 2000).  If the facts in the claim are sufficient to
state a cause of action, a motion to dismiss must be denied. See
Nollet, 83 F. Supp. 2d at 208.

Although a court must accept as true all the factual
allegations in a claim, that doctrine is not applicable to legal
conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Threadbare
recitals of legal elements which are supported by mere
conclusory statements do not suffice to state a cause of action.
Id.

### B. Application

Plaintiff alleges that Uber is liable for the tortious
misconduct of Amfo either because Uber is a common carrier or
because it is vicariously liable.  Plaintiff further alleges

- 7 -

that Uber is directly liable for its own negligence in failing
to implement adequate safety measures as well as for negligent
hiring, training, retention and management.

Uber responds that (1) it is a Transportation Network
Company ("TNC"), not a common carrier and, therefore, not
subject to common carrier liability; (2) Amfo's actions fall
outside of the scope of respondeat superior liability; and (3)
plaintiff fails to state a claim of negligence or negligent
hiring, training, retention, supervision and management.

### 1.   Procedural Deficiency

As a preliminary matter, plaintiff contends that Uber's
motion to dismiss must be denied on procedural grounds because
Uber failed to comply with Local Rule 7.1(a)(2) of the Local
Rules of the United States District Court for the District of
Massachusetts ("L.R. 7.1(a)(2)").  That rule provides that no
motion may be filed

> unless counsel certify that they have conferred and
> have attempted in good faith to resolve or narrow the
> issue.

Failure to comply with the "meet and confer"
requirement of L.R. 7.1(a)(2) primarily implicates the
Court.  It is designed to force parties to present issues
to the Court only after they have determined that judicial

intervention is necessary. See Converse, Inc. v. Reebok Intern. Ltd., 328 F. Supp. 2d 166, 170-71 (D. Mass. 2004).

In an attempt to justify its non-compliance with L.R. 7.1(a)(2), Uber contends that the "meet and confer" requirement applies only after the Court establishes a "framework for the disposition of motions" pursuant to L.R. 7.1(a)(1).  But the rule contains no exception for motions to dismiss or any other motions filed before a "framework" for motions has been established and thus the requirement plainly applies to all motions filed in this district.

A district court possesses "great leeway in the application and enforcement of its local rules." United States v. Roberts, 978 F.2d 17, 20 (1st Cir. 1992); see also Padmanabhan v. Healey, 159 F. Supp. 3d 220, 226 (D. Mass. 2016).  Here, Uber's failure to observe L.R. 7.1(a)(2) would warrant a mild sanction but, recognizing that Uber was operating under a misconception of the rule, the Court will not impose one.  Instead, it will require that any future motions in this case be accompanied by an affidavit signed by the attorney filing the motion under the pains and penalties of perjury stating the time, date and person with whom the L.R. 7.1(a)(2) conference was

held.  Failure to submit such an affidavit may result in

sanctions.

### 2.    Common Carrier Liability

Common carriers have a duty to provide safe transport for

their passengers. Gilmore v. Acme Taxi Co., 212 N.E.2d 235, 236

(Mass. 1965) (citing Jackson v. Old Colony St. Ry., 92 N.E. 725,

727 (Mass. 1910)).  That duty includes protecting passengers

from intentional torts committed by certain agents of the common

carrier. See, Gallant v. Gorton, 581 F. Supp. 909, 910 n.1 (D.

Mass. 1984); see also, Gilmore, 212 N.E.2d at 236; Jackson, 92

N.E. at 727.

> In Massachusetts, a common carrier is an entity that
> operate[s] any motor vehicle upon any public way in
> any city or town for the carriage of passengers for
> hire, in such a manner as to afford a means of
> transportation similar to that afforded by a railway
> company, by indiscriminately receiving and discharging
> passengers along the route on which the vehicle is
> operated or may be running, or for transporting
> passengers for hire as a business between fixed and
> regular termini . . . .

Mass. Gen. L. c. 159A, § 1 ("the Common Carrier Statute").  A

TNC, on the other hand, is an "entity that uses a digital

network to connect riders to drivers to pre-arrange and provide

transportation." Mass. Gen. L. c. 159A 1/2, § 1 ("the TNC

Statute").  TNCs are expressly exempt from the Department of

Public Utilities' ("DPU") "rate or common carrier requirements

pursuant to chapters 159, 159A or 159B." Mass. Gen. L. c. 159A
1/2, § 2(h).

Uber is, indisputably, a TNC.  Indeed, the Massachusetts
Legislature enacted the TNC statute with a clear intent to
regulate entities like Uber and Lyft. See Boston Taxi Owners
Ass'n v. City of Boston, 180 F. Supp. 3d 108, 113 (D. Mass.
2016) ("Recent amendments to the state regulations establish
standards for the registration of motor vehicles providing
services for [TNCs], such as Uber, Lyft and Sidecar.").  Uber
contends that, as a TNC, § 2(h) of the TNC Statute expressly
exempts it from common carrier regulations and, therefore, it
cannot be subject to common carrier liability. See Mass. Gen. L.
c. 159A 1/2, § 2(h).

Uber's vigorous argument is nevertheless unavailing. Id.
Far from conclusively resolving the issue of what standard
applies to Uber's tort liability, § 2(h) simply clarifies that
Uber is not bound by certain DPU rate and regulatory
requirements.  Absent any statutory basis for determining the
applicable standard of liability, the Court considers common law
analogs.  As is historically the case in actions involving Uber,
taxicab companies, which are common carriers, provide an apt
analogy.  As this Court has previously stated, noticeable and
evolving differences exist between taxis and TNCs and whether

the two are similarly situated is not an issue easily
disentangled and is subject to reassessment as the
transportation network industry evolves. Boston Taxi Owners
Association, Inc. v. City of Boston, 180 F. Supp. 3d 108, 118
(D. Mass. 2016).

Accepting all factual allegations in the complaint as true
and drawing all reasonable inferences in plaintiff's favor,
plaintiff has stated a plausible claim that Uber should be held
to the common carrier standard of liability because it operates
in substantially the same manner as taxi cab companies. See,
e.g., Gilmore,212 N.E.2d at 236.

Specifically, plaintiff alleges that Uber's ride-sharing
service is available to the general public through use of the
free Uber app; Uber drivers are prohibited from refusing to
provide services based on, among other things, the rider's
destination, income, background or race; Uber's sole source of
revenue derives from riders; and Uber instructs its drivers to
comply with all relevant state, local and federal law regarding
the transportation of individuals with disabilities.  Such
allegations support plaintiff's claim that Uber should be
subject to common carrier liability because it

> holds [itself] out as furnishing transportation to any
> and all members of the public who desire such service
> insofar as [its] facilities enable [it] to perform the
> service.

See <u>Mt. Tom Motor Lines, Inc.</u> v. <u>McKesson & Robbins, Inc.</u>, 89
N.E.2d 3, 5-6 (Mass. 1949).

Plaintiff has further alleged that, despite Uber's
classification of its drivers, including Amfo, as independent
contractors rather than employees, Uber exercises control over
its drivers sufficient to hold Uber liable under the common
carrier standard of liability for the torts of its drivers. <u>See</u>
<u>Gilmore</u>, 212 N.E.2d at 236 ("If a passenger is assaulted and
insulted, through the negligence or the willful misconduct of
the carrier's servant, the carrier is necessarily responsible."
(quoting <u>Jackson</u>, 92 N.E. at 727)).  Plaintiff specifically
alleges that Uber retains the right to terminate its drivers at
will, establishes the rate for any given ride, prohibits drivers
from negotiating fees, does not disclose ride destinations until
a driver accepts a ride and requires payment to be completed
through the Uber app.  Plaintiff further alleges that she was
assaulted by Amfo during a ride requested through the Uber app
which Uber assigned to Amfo.

Although discovery may reveal that Uber operates in a
manner sufficiently distinct from common carriers or exercises
insufficient control over its drivers, plaintiff has at least
stated a claim that, here, Uber is a common carrier and may be
held liable for Amfo's tortious misconduct.

### 3.   Respondeat Superior

Plaintiff submits that if Uber is not a common carrier, it is nonetheless liable for Amfo's actions under a theory of respondeat superior.  Uber rejoins that it cannot be held vicariously liable for Amfo's misconduct because (1) Amfo was not its employee and (2) the alleged assault occurred outside the scope of Amfo's contract.

In Massachusetts, an employer may be held liable for torts committed by its employee if the misconduct occurred within the course and scope of the employment. Doe v. Medeiros, 266 F. Supp. 3d 479, 484 (D. Mass. 2017).  Conduct occurs within the course and scope of employment if:

> (1) it is of the kind for which [the employee] is hired to perform; (2) it occurs within the authorized time and space limits and (3) it was motivated, at least in part, by a purpose to serve the employer.

Id. at 490.  The test is, in effect, whether the alleged conduct is the "kind of thing that in a general way employees of this kind do in employment of this kind." Kansallis Finance Ltd. v. Fern, 659 N.E.2d 731, 735 (Mass. 1996).

The Massachusetts Supreme Judicial Court has held in no uncertain terms that "rape and sexual assault . . . do not serve the interests of the employer" and are "not motivated by a purpose to serve the employer." Doe v. Purity Supreme, Ltd., 664 N.E.2d 815, 820 (Mass. 1996).  Accordingly, in Massachusetts,

employers may not be held vicariously liable for the sexual misconduct of their employees. See, e.g. id.; see also, Doe, 266 F. Supp. 3d at 491 ("[T]he Massachusetts Supreme Judicial Court has declined to rule that employers are vicariously liable for sexual assaults."); Petrell v. Shaw, 902 N.E.2d 401 (Mass. 2009) (holding that bishop and archdiocese were not liable for the sexual misconduct of a rector because rector was not "acting within the scope of his employment duties when he engaged in a sexual relationship with the plaintiff").

The Court need not resolve whether Amfo is an Uber employee rather than an independent contractor because, as a matter of law, sexual assault necessarily falls outside the scope of employment.  Accordingly, plaintiff's alternative theory of vicarious liability fails.

### 4.   General Negligence

Plaintiff also seeks to hold Uber directly liable for its alleged negligence in failing to implement proper ride safety and security features.  To state a claim for negligence, plaintiff must allege that (1) Uber owed her a duty of reasonable care; (2) Uber breached that duty; and (3) plaintiff suffered damages (4) caused by Uber's breach. Saldivar v. Racine, 818 F.3d 14, 20-10 (1st Cir. 2016).

Plaintiff alleges that Uber breached its duty to provide her safe travel while utilizing Uber's services.  She contends that Uber unreasonably failed to implement adequate safety and security measures such as features that would alert authorities of erratic or unexpected driver misconduct.  According to plaintiff, Uber should have known that its failure to implement safety features would cause her the kind of injuries she sustained.  Such allegations, taken as true, state a claim for negligence.

### 5.   Negligent Hiring, Training, Retention, Supervision and Management

Plaintiff also seeks to hold Uber directly liable for negligent hiring, training, retention and management.  An employee may be held liable for the actions of its agent if the employer

> knew, or should have known, that the offending
> employee had a proclivity to commit the complained-of
> acts, and that the employer nevertheless failed to
> take corrective action.

Vicarelli v. Business Intern., Inc., 973 F. Supp. 241, 246 (D. Mass. 1997).

Plaintiff alleges that Uber knew or should have known that Amfo would be a danger to passengers and cause the kind of harm that plaintiff suffered.  Plaintiff does not, however, plead any facts in support of her causation argument.  For example, she

does not identify any "red flags" in Amfo's background or employment history that should have alerted Uber to Amfo's propensity for sexual assault.  Neither does she explain how additional training, supervision or management would have prevented, or at least minimized the risk of, Amfo sexually assaulting plaintiff.

Although the motion to dismiss standard is not onerous, a plaintiff must present more than such threadbare recitals of legal elements supported only by conclusory statements. <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662 (2009).  Consequently, plaintiff's claim for negligent hiring, training, retention, supervision and management against Uber (Count II), will be dismissed.

## ORDER

For the foregoing reasons, the motion of plaintiff Emily Murray for remand (Docket No. 18) is **DENIED.**

The motion of defendant Uber Technologies, Inc. ("Uber") to dismiss plaintiff's complaint (Docket No. 5) is,

(a)  with respect to plaintiff's claim of negligent hiring, training, retention, supervision and management (Count II), **ALLOWED,**

(b)   with respect to those portions of Counts III, IV, V

and VI that seek to hold Uber vicariously liable for

the allegedly tortious misconduct of defendant

Frederick Amfo on a theory of respondeat superior,

**ALLOWED,** but

(c)   otherwise, **DENIED.**


**So ordered.**


                                   /s/ Nathaniel M. Gorton
                                   Nathaniel M. Gorton
                                   United States District Judge


Dated September 11, 2020